SIMON BRINN and LOUIS BRINN, Appellants, v. HARRY HINDLEMANN, INC., Respondent.

First Department, January 13, 1922.

Trial — use of part of single counterclaim in Municipal Court action bar to use of balance of counterclaim subsequently in Supreme Court action — Appellate Division may not grant final judgment where plaintiffs failed to move for direction of verdict.

Where the defendant in an action in the Municipal Court of the City of New York to recover the balance due on the second of four contracts for the sale of goods used part of a single counterclaim based on a parol

agreement affecting all four contracts where, although the amount was greater than the jurisdiction to award judgment, said defendant might have interposed its entire counterclaim and have established the same, it is barred from interposing the balance of its counterclaim subsequently in an action in the Supreme Court on the first of the four contracts, and the plaintiffs' motion at the close of the evidence for the dismissal of the counterclaim should have been granted.

The Appellate Division may not grant final judgment for the plaintiffs, under Code of Civil Procedure, section 1317, as they made no motion at the trial for the direction of a verdict in their favor.

APPEAL by the plaintiffs, Simon Brinn and another, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Bronx on the 17th day of May, 1920, upon the verdict of a jury, and also from an order entered in said clerk's office on the 26th day of May, 1920, denying plaintiffs' motion to set aside the verdict and for a new trial made upon the minutes.

*Julius D. Tobias* [*I. Maurice Wormser* of counsel; *Isaac Josephson* and *Ralph F. Kane* with him on the brief], for the appellants.

*Cherurg & Cherurg* [*Harold R. Medina* of counsel], for the respondent.

LAUGHLIN, J.:

This is an action to recover $3,595.21, the balance owing on the purchase price of twenty-six pieces of green flannel woolen goods for men's suits, which the plaintiffs sold and delivered to the defendant on August 1, 1919. There is no controversy with respect to the sale and delivery of the goods or the agreed purchase price or the balance unpaid thereon. The principal point presented for decision is with respect to whether the interposition by the defendant of a counterclaim and a recovery thereon in an action brought against it by the plaintiffs in the Municipal Court in the Borough of Bronx on the 19th of December, 1919, barred a recovery by it on the counterclaim herein. That action was to recover for the purchase price of two pieces of like goods sold and delivered by the plaintiffs to the defendant on the 12th of August, 1919. On the 2d and 22d of September, 1919, plaintiffs also sold

and delivered to the defendant thirty-four and eleven pieces, respectively, of the same kind of goods. This action to recover on the *first* of the four contracts of purchase and sale was commenced on the 6th of December, 1919, and the Municipal Court action to recover on the *second* contract was commenced thirteen days later or on the nineteenth of the same month. A third action subsequently brought in the Supreme Court by the plaintiffs against the defendant to recover on the *third* and *fourth* contracts is still pending. · In accordance with the custom of the business and in order that the goods might be examined and shrunk preparatory to making them up into suits, plaintiffs by direction of the defendant made all deliveries to the Peerless Cloth Examining, Shrinking and Refinishing Works in the borough of Manhattan, New York. It was also a custom of the business for the examiners and shrinkers to accept for the purchaser goods found to conform to the contract, and to reject any of the goods found to be defective, and give notice thereof to the seller and to the buyer, and to notify the seller that they were held subject to his order, and then the seller would either send for the goods or arrange with the examiners and shrinkers for their return to him. In accordance with this custom, on the fourth of August, the shrinkers rejected six of the pieces covered by the first contract, as defective, and they retained the six pieces which they rejected and gave the customary notice with respect thereto and delivered the other twenty pieces to the defendant. It is fairly to be inferred from the evidence that the same course was pursued with respect to each of the other three deliveries of goods; but, doubtless owing to the fact that they were not directly involved, the facts with respect thereto were not shown in detail. One or more pieces of each delivery, aggregating thirty-four in all under the four contracts, were so found by the examiners and shrinkers to be defective, and were retained by them, and the other pieces were accepted and delivered to the defendant. The president of the defendant testified that the plaintiff Louis Brinn repeatedly called on him after the rejection of some of the pieces of goods by the examiners and shrinkers, and requested him to go to the examiners and shrinkers to examine the rejected goods, which he refused to do on the ground that the defendant could not

use them; and on or about the 15th of October, 1919, which was after the rejection by the examiners and shrinkers of the thirty-four pieces of goods, said Brinn came to the defendant's place of business and assured him that the " washer streaks " in the goods, on account of which the examiners and shrinkers rejected them, would come out on pressing the goods after they were made up into suits, and as an inducement to the defendant to accept and make up the goods, agreed that, if the defendant would accept them and make them up into suits and the " washer streaks " did not come out, plaintiffs would make good the defendant's loss; that on this assurance the defendant ordered the goods delivered to it and had them made up into suits, but that the " washer streaks " did not come out on the suits being pressed, and the defendant sold the suits on the 12th of January, 1920, at ten dollars and fifty cents per suit after they had been rejected by a purchaser in Nashville, Tenn., to whom defendant had contracted to sell them for twenty-two dollars and fifty cents per suit at or about the time it contracted with the plaintiffs for the purchase of the goods, and that said Brinn, before so inducing the defendant to accept the goods, was informed that such contract had been made, and that the defendant believed that its purchaser would not accept the suits so to be made up. Testimony was also given on behalf of the defendant by three witnesses to the effect that after the trousers had been made up, but before the coats had been returned by the defendant's tailors, it was discovered that the " washer streaks," also called creases, had not disappeared, and said Brinn, one of the plaintiffs, was summoned and they were shown to him, and defendant's president expressed reluctance to ship the suits to its customer at Nashville lest they might be returned and it might lose its customer, but was urged by Brinn to ship them and was assured, in effect, that the plaintiffs would make good any loss resulting to defendant therefrom. The thirty-four defective pieces made 748 suits, and the defendant shipped to its customer at Nashville 195 of them, and they were all rejected and returned with the exception of some that were lost in transit.

It thus plainly appears that, prior to the commencement of any of the three actions for the recovery of the purchase

price of the goods sold by the plaintiffs to the defendant under the four contracts, defendant's damages, on the theory of a breach of an expressed or implied warranty with respect to the quality of the goods, had accrued and were known to the defendant; and that its damages for a breach of the parol agreement under which it accepted the delivery of the thirty-four defective pieces and made them into suits on the assurance of the plaintiffs that they would make good its loss if the defects did not disappear, at least, damages predicated upon the difference between the market value of the suits made up of the defective goods and their market value if the goods had not been defective, had also accrued prior to the commencement of any of the actions.

The pleadings in the Municipal Court action were informal. Plaintiffs claimed for goods sold and delivered, and the answer was " General denial, breach of contract, breach of warranty," and at the opening of the trial defendant was allowed to amend its answer by setting up a counterclaim for $200. For a bill of particulars with respect to its counterclaim defendant stated orally as follows: " The damage was sustained by reason of the making up of garments from that one piece of merchandise aggregating twenty suits and the loss of ten dollars on each suit. * * * There were twenty garments made up from one of the pieces of cloth in this suit and that these twenty suits by reason of defects, breach of warranty, it is claimed by the defendant that the defendant suffered damage or loss of ten dollars on each and every suit and this aggregates twenty times ten, making a sum total of two hundred dollars." It will be observed from this that the counterclaim in the Municipal Court action, which was brought for the purchase price of two pieces, was for damages owing to one of the pieces being defective. Defendant, in support of its counterclaim in the action in the Municipal Court, proved the substance of the entire transactions between the parties as hereinbefore stated, with the exception of the sale of the suits by the defendant for ten dollars and fifty cents per suit, which did not occur until after that trial, and with the further exception that at that time the suits had not been returned from Nashville, although according to the testimony offered in behalf of the defendant they had been rejected by

the purchaser and the plaintiffs had been notified thereof. On the trial of the Municipal Court action, the jury rendered a verdict in favor of the plaintiffs for the contract price of the two pieces of goods involved in that action less the defendant's counterclaim for two hundred dollars, which they allowed. In this action, defendant, disregarding the allowance of its counterclaim in the Municipal Court action, interposed a counterclaim both for a breach of warranty and on the parol agreement, and therein specified its damages as ten dollars per suit on all the suits made up from the thirty-four pieces of defective goods. Although the defendant alleges in the counterclaim a breach of warranty with respect to the quality of the goods, it does not allege its damages on that theory, which, since the breach was discovered on delivery, would be the difference between the market value of the cloth contracted to be delivered and that actually delivered. (Pers. Prop. Law, § 150, subd. 7, as added by Laws of 1911, chap. 571.) Plaintiffs in reply pleaded the Municipal Court judgment as *res adjudicata* and in bar of the defendant's counterclaim. Defendant attempts to meet this plea on the theory that its recovery on the counterclaim in the Municipal Court was for a breach of the contract of sale or of warranty. In so claiming, defendant takes a position inconsistent with its answer herein, in which it is expressly alleged that the counterclaim interposed in the Municipal Court action was predicated upon the special parol agreement on the part of the plaintiffs by which defendant was induced to make the goods up into suits on the plaintiffs' agreement to make good any loss it sustained thereby. We are of opinion that the record of the trial of the Municipal Court action does not sustain the defendant's contention. The counterclaim was not interposed for damages predicated on the difference between the market value of the goods if as contracted to be delivered, and their actual market value, which would be the rule of damages applicable to a breach of any warranty for the reason that the defects in the goods were discoverable and were discovered before the goods were manufactured into suits (Pers. Prop. Law, § 150, subd. 7); and, therefore, were it not for the special parol agreement, defendant, having accepted and used the goods, could have claimed no reduction from

the contract price, save on the theory of a breach of an express or implied warranty, and on that theory its damages would be measured by the difference in value of the goods and not by the difference in value of the suits made up therefrom. Moreover, the evidence offered by the defendant in the Municipal Court action with respect to the damages claimed under its counterclaim was not concerning the difference in the market value of the goods, but related solely to the difference in value of the goods when manufactured into suits; and that evidence was objected to by the plaintiffs on the ground that it was not the proper measure of damages, and the objection was overruled on the defendant's claim that it was entitled to that measure of damages owing to the special parol agreement to make good any loss it sustained by manufacturing the goods into suits. It necessarily follows, therefore, that the defendant's recovery on its counterclaim in the Municipal Court was predicated on the parol agreement by which it was induced to manufacture the goods into suits on the understanding that any loss it sustained thereby would be made good by the plaintiffs. If there had been a separate parol agreement with respect to the defective goods delivered under each of these contracts, then it might be held that the defendant was not obliged in the Municipal Court action to interpose its counterclaim for the damages predicated on the parol agreements concerning the goods delivered under the other contracts; but the evidence upon which the defendant relied with respect to the parol agreement points to *a single agreement* with respect to the thirty-four defective pieces of goods; and since testimony with respect to that agreement is controverted by the plaintiffs, who presented testimony tending to show that no such agreement was made and that the goods delivered conformed to the contracts, the defendant is not in a position to claim that there was a separate and distinct agreement with respect to the defective pieces of goods delivered under the several contracts. The defendant claimed in the Municipal Court action that, by virtue of the parol agreement, it was entitled to counterclaim its damages, measured by the difference between what would have been the market value of the suits made up of the goods if of the agreed quality, and the market value thereof as made up of

the defective goods, and claimed in the counterclaim that its damages on that theory were ten dollars per suit, and that is the basis upon which its counterclaim for two hundred dollars was allowed in the Municipal Court, for twenty suits were made up from the piece of cloth which was defective. The defendant, by its counterclaim and evidence in support thereof, made precisely the same claim herein. It did not confine its claim to its actual loss in forwarding the goods to Nashville, and did not even show its expenditures in so doing; and while it showed what it received for the suits, it also showed their market value and what it would have been if the goods had been according to the contracts, and claimed and has been allowed damages on the basis of ten dollars per suit. I see no escape, therefore, from the conclusion that the defendant used part of a single counterclaim in the Municipal Court action, where, although the amount was greater than the jurisdiction of the court to award judgment, it might have interposed it to the extent of the jurisdiction of the court; and it has been held, but it is not necessary to decide the point now, that it might have pleaded its entire counterclaim and have established the same (*Security Mortgage Co.* v. *Kallis*, 102 Misc. Rep. 693; affd., 184 App. Div. 936; *East Forty-sixth St. Realty Corp.* v. *Gutschneider, Inc.*, 103 Misc. Rep. 491; *Silberstein* v. *Begun*, 107 id. 395), and, therefore, in any event it is debarred from interposing the balance of its counterclaim herein. (*Carvill* v. *Mirror Films, Inc.*, 178 App. Div. 644; affd., 226 N. Y. 683; *Secor* v. *Sturges*, 16 id. 548; *Perry* v. *Dickerson*, 85 id. 345; *Dickinson* v. *Tysen*, 125 App. Div. 735; *Farrington* v. *Payne*, 15 Johns. 432; *De Wolf* v. *Crandall*, 34 N. Y. Super. Ct. 14; *Inslee* v. *Hampton*, 11 Hun, 156; *Rogers* v. *Rogers*, 1 Daly, 194; *Wilder* v. *Case*, 16 Wend. 583.)

At the close of the evidence on the trial of the issues herein, the plaintiffs moved for a dismissal of the counterclaim, and the motion was denied and they excepted. I am of opinion that that motion should have been granted on the theory that the counterclaim is to be construed as I have indicated, namely, for damages under the special parol agreement, and not for a breach of warranty with respect to the quality of the goods, which is further indicated as the true construction thereof by an allegation therein that after the

delivery of the defective goods which constituted the breach of warranty, " the plaintiffs and defendant entered into an agreement in qualification of the first agreement entered into wherein and whereby the plaintiffs agreed that in consideration of the defendant retaining and keeping the said merchandise aforesaid mentioned, and cutting the same up in garments, that if the same after cutting, manufacturing and pressing did not remove the streaks contained in the said merchandise, that then and in such event the plaintiffs would pay to the defendant any sum or sums of money which the defendant might suffer or lose by reason of his inability to sell the said merchandise at the fixed and market value."   We refrain from expressing any opinion on the point as to whether the defendant, having used the counterclaim predicated on the special agreement in the Municipal Court merely to the extent of its damages with respect to the single defective piece of goods involved in that action, would have been at liberty to interpose a counterclaim herein predicated on a breach of warranty, for the record does not present that point for decision, and it has not been argued by counsel, and it may well be that any liability of the plaintiffs upon the theory of guaranty was released by the special agreement which it is alleged in the counterclaim was entered into in qualification of the contracts of sale.   The record, however, does not enable us to grant a final judgment, for plaintiffs made no motion for the direction of a verdict in their favor.   (Code Civ. Proc. § 1317.)

It follows that the judgment and order should be reversed, and a new trial granted, with costs to appellants to abide the event.

CLARKE, P. J., SMITH, MERRELL and GREENBAUM, JJ., concur.

Judgment and order reversed and new trial ordered, with costs to appellants to abide event.   Settle order on notice.